# VICORY v DEMOCRATIC STATE EXECUTIVE COMMITTEE OF FLORIDA, et al.

## Case No. 90-3595

Second Judicial Circuit, Leon County

January 16, 1991

### APPEARANCES OF COUNSEL

**Daniel J. Gerber, Esquire,** for plaintiff, Marion William "Bill" Vicory.

**John H. French, Jr., Esquire,** for defendants, Democratic State Executive Committee of Florida and Florida Democratic Party.

**George L. Waas, Esquire,** Department of Legal Affairs, for defendants, Jim Smith, as Secretary of State of Florida and Tom Gallagher, as Treasurer of the State of Florida.

### OPINION OF THE COURT

P. KEVIN DAVEY, Circuit Judge.

### FINAL SUMMARY JUDGMENT

Plaintiff, Marion William "Bill" Vicory, seeks summary judgment on

his claim that the Defendants,[1] acting individually or in concert, have violated Florida Statute § 103.121(5)(b) (1989). Initially, Vicory sought various forms of judicial relief,[2] but now seeks an Order of this Court requiring the Democratic Executive Committee of Florida (Committee) and the Florida Democratic Party (Party) to forfeit all 1990 party assessments.

Although none of the Defendants have moved for entry of summary judgment, all the parties through counsel agreed and stipulated that there are no material facts in dispute; and that the issue presented is strictly a matter of law. After reviewing the pleadings and submissions of the respective parties, this Court concurs that there are no material facts at issue and that summary judgment is appropriate. The Court finds as a matter of law that the Defendants are entitled to summary judgment on the grounds that the statute in question is unconstitutional, in that it unduly infringes upon the Defendants' rights of free, political speech and association as guaranteed by the First Amendment to the United States Constitution.

## FACTS

Edward Chiles, a candidate for the Democratic nomination for State Senator in District 24, received a $20,000 contribution from the Democratic State Executive Committee on March 14, 1990. On July 19, 1990, one day before the qualification deadline, Mr. Vicory qualified as a candidate for the same senate seat in the Democratic primary. Upon learning of the $20,000 contribution, Mr. Vicory requested a campaign contribution equal to that received by Mr. Chiles. This request was refused by the Democratic Executive Committee. Thereafter, in the primary election held on September 4, 1990, Chiles defeated Vicory to obtain the Democratic nomination for this senate seat.

## CONTENTIONS

Vicory contends that the $20,000 campaign contribution from the Democratic State Executive Committee amounts to an endorsement of his opponent's candidacy, in clear violation of Florida Statute § 103.121(5)(b). He further urges that the statutory penalty—the forfeiture of all party assessments—should be ordered.

---

[1] Democratic State Executive Committee of Florida, Florida Democratic Party, Simon Ferro, Jim Smith, Tom Gallagher and Edward Chiles.

[2] Plaintiff's Complaint, filed August 17, 1990, sought injunctive relief, mandamus relief, a trial by jury, as well as the declaratory relief that is now requested. This cause was not brought to the Court's attention until late October and more than a month after the primary election. The request for injunctive relief is now moot; and this order moots the request for mandamus relief and trial by jury.

**177**

Defendants, Democratic State Executive Committee of Florida, Florida Democratic Party, and Simon Ferro, initially contend that making a "campaign contribution" is not specifically included in the actions which are delineated by the statute in question, and therefore the Plaintiff is not entitled to relief. Alternatively, these Defendants urge that the statute is an unconstitutional infringement upon their First Amendment rights, and therefore should not be enforced.

The Attorney General's Office, appearing on behalf of Defendants, Jim Smith and Tom Gallagher, contends that the statute is presumptively constitutional; that it differs substantially from the statute which was declared unconstitutional in *Abrams v Reno*, 452 Fed. Supp. 1166 (S.D. Fla. 1978); and that the statute is narrowly drawn and reflects the State of Florida's compelling interest in regulating the election process.

## ANALYSIS

Initially, this Court rejects the Defendants' contention that the legislature did not intend to include campaign contributions from the operation of this statute under the doctrine of *expressio unius est expressio alterius*. This principle of statutory construction[3] is inapplicable to the present inquiry since the legislative intent of the statute is crystal clear. The Court also rejects the contention that a campaign contribution is not an "endorsement" within the meaning of the statute. There can be no greater expression of endorsement than the contribution of monies to a campaign. Moreover, contributions are a form of symbolic expression fully protected by the First Amendment to the United States Constitution. *Buckley v Valeo*, 424 U.S. 1, 96 S.Ct. 612 (1976); and the acquisition of campaign funds is "necessary for effective advocacy." Id. at 21. Without question, the contribution of money by the State Democratic Executive Committee to the Chiles campaign was the type of endorsement to which Florida Statute § 103.121(5)(b) applies.

The Defendants' (Committee, Party, and Ferro) alternative contention, however, does have merits. The statute in question provides in pertinent part:

"Any state executive committee that endorses or intends to endorse, certify, screen, or otherwise recommend one or more candidates for nomination shall forfeit all party assessments which would otherwise be returned to the state executive committee; and such assessments

---

[3] Loosely translated from the Latin, this phrase means the mention or expression of one thing implies the exclusion of another.

178

shall be remitted instead to the general revenue fund of the state. Any state executive committee that is in violation of this section after receiving the party assessment shall remit such party assessment to the general revenue fund of the state." Unquestionably, this statute differs, as Vicory, Smith, and Gallagher contend, from the penal statute which prohibited such endorsement activity and which was found constitutionally infirm by Judge Hoeveler in *Abrams,* supra. However, while the revised version[4] of this statute no longer criminalizes such activity, the forfeiture of vast sums of party assessments has arguably a similar, chilling effect on the Defendants' protected rights of free speech and association. A statute which burdens the free speech and associational rights of political parties and their members can survive constitutional scrutiny only if the State demonstrates that the statute advances compelling State interests and is narrowly tailored to serve that purpose. *Eu v San Francisco County Democratic Central Committee,* 109 So. Court 1013 (1989). That showing has not been made.

In the instant case, Vicory urges that party support of one primary candidate over another is inherently unfair and results in intra-party friction with the resultant possibility of damage to the party's interests in the general election. The Attorney General's Office, on behalf of Defendants Smith and Gallagher, seeks to uphold the constitutionality of the statute on the grounds that the State has a right to regulate political parties to preserve the fairness and integrity of the electoral process.

However, as *Eu* clearly holds, these rationales are insufficient to provide the compelling State interests necessary to permit infringement of political speech and association. *Eu* at 1022-1023.

Freedom of association means not only that an individual voter has a right to associate with a political party of his or her choice, but also that a political party has a right to "identify the people who constitute the association." *Tashjian v Republic Party of Connecticut,* 479 U.S. 208, 107 S.Ct. 544 (1986). Further, it has been held that the political parties have a right to select a "standard bearer who best represents the party's ideologies and preferences." *Ripon Society, Inc. v National Republican Party,* 525 Fed.2d 567 (C.A.D.C. 1985) cert. denied 96 S. Ct. 1147 (1976). A State may not enact election laws to control intra-party friction during a primary campaign. A primary is not hostile to intra-party feuds; rather it is an ideal forum in which to resolve them. *American Party of Texas v White,* 415 U.S. 767, 94 S.Ct. 1296 (1974).

---

[4] Chapter 83-242(2) *Laws of Florida.*

Finally, the concept of freedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders. *Democratic Party of the United States v Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010 (1981).

In accordance with the dictates of *Eu v San Francisco Democratic Central Committee,* supra, Florida Statute § 103.121(5)(b) unduly infringes upon the rights of free speech and association of the Defendant Committee and Party is therefore unconstitutional. Accordingly, it is

ORDERED AND ADJUDGED that Florida Statute § 103.121(5)(b) is hereby declared unconstitutional for the reasons expressed above. It is further

ORDERED AND ADJUDGED that final summary judgment is entered in favor of the Defendants, Democratic State Executive Committee of Florida, Florida Democratic Party, Simon Ferro, and Edward Chiles; and the Plaintiff shall take nothing by his complaint. The Motions to Dismiss filed by Defendants Jim Smith and Tom Gallagher are moot.

DONE AND ORDERED in Chambers at Tallahassee, Leon County, Florida, this 16th day of January, 1991.